

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

*Rod J. Rosenstein*
*United States Attorney*

*Bonnie S. Greenberg*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4890*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*
*TTY/TDD: 410-962-4462*
*Bonnie.Greenberg@usdoj.gov*

November 10, 2009

BY FACSIMILE AND FIRST CLASS MAIL

Michael W. Gast
226 East Patrick Street
Frederick, Maryland 21701

Re: United States v. Mathew Droneburg

Dear Mr. Gast:

This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by close of business on November 30, 2009, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

1. The Defendant agrees to plead guilty to an Information charging him with Receipt of Child Pornography, 18 U.S.C. § 2252A(a)(2)(A). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court. Further, your client agrees to waive his right to be charged by the grand jury for this offense.

Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

First, that on or about the date charged in the Information, the Defendant knowingly received child pornography and material that contained child pornography;



Second, that the child pornography had been shipped and transported in interstate or foreign commerce.

Penalties

3. (a) The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for a mandatory minimum of five (5) years and not more than twenty (20) years, followed by a term of supervised release of not more than life and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

(b) The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the grand jury.

---

[1]Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

       c.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

       d.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

       e.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

       f.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

       g.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

       h.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

       i.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

(a) Under § 2G2.2 of the Sentencing Guidelines Manual, the parties agree that:

(i) The base offense level is a level 22.

(ii) Under § 2G2.2(b)(1), there is a 2 level decrease as the defendant's conduct was limited to receipt of material relating to the sexual exploitation of children.

(iii) Under § 2G2.2(b)(2), 2 levels are added because the material involved prepubescent minors.

(iv) Under § 2G2.2(b)(4), 4 levels are added because the offense portrays sadistic or masochist conduct or other depictions of violence.

(iv) Under § 2G2.2(b)(6), 2 levels are added because the offense involved the use of a computer for the possession, transmission, receipt, and distribution of the material.

(v) Under § 2G2.2(b)(7)(D), 4 levels are added because the offense involved at least 300 but fewer than 600 images.

(b) This Office does not oppose a two-level reduction in the defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense;

(d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Thus, the final anticipated base offense level, prior to any departures is **29**.

8.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9.     This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, or adjustments set forth in Chapters 2, 3, 4, and 5 of the United States Sentencing Guidelines will be raised or are in dispute.

## Waiver of Appeal

10.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range, as follows: the Defendant waives any right to appeal from any sentence within or below the advisory guidelines range resulting from an adjusted base offense level of 27, and this Office waives any right to appeal from any sentence within or above the advisory guidelines range resulting from an adjusted base offense level of 27. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

11.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than

those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

Court Not a Party

12. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Restitution

13. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A, the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Forfeiture

14. The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on September 5, 2008. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

## Entire Agreement

15. This agreement supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this agreement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: ______________________
Bonnie S. Greenberg
Assistant United States Attorney

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/9/09
Date

______________________
Mathew Droneburg

I am Mathew Droneburg's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

12/10/09
Date

______________________
Michael W. Gast, Esquire

**EXHIBIT A - STIPULATED FACTS**

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Mathew Droneburg, age 29, is a resident of Sharpsburg, Maryland.

In 2007, information was received that an individual, using email address copenhagen912@aol.com, and residing at 5023 Harpers Ferry Road, Sharpsburg, Maryland 21782, made three attempts to purchase subscriptions to child pornography websites between August 28 and September 1, 2007. Of the three transactions, two were successful. The two successful purchases were for 30 day subscriptions to the following websites - "Fallen Girls" and "Gentle Angels."

"Gentle Angels" website consists of seductive images which appear to depict females ranging in age from ten to fifteen years old. Some of the images depict minor females posing in the nude displaying their breasts and genital area. When clicking on the "Join" link, the website states, "You are about to enter the world's amazing collection of exclusive images featuring wonderful girls of 16 or younger." In April 2007, the "Fallen Girls" website was confirmed by the National Center for Missing and Exploited Children as a website containing child pornography.

On September 5, 2008, FBI special agents conducted a federal search warrant on Droneburg's residence. During the execution of the search warrant, Droneburg was interviewed and admitted he had purchased child pornography via the Internet. Droneburg acknowledged that his email address had been copenhagen912@aol.com for approximately two years before his internet service changed to Comcast in January 2008. Droneburg admitted to purchasing the membership to "Gentle Angels" through the website. He indicated that he did not remember purchasing a membership to the "Fallen Angels" website.

Droneburg admitted that he has made multiple membership purchases to websites containing child pornography, including myteens.com, nubiles.com and nastyangels.com. His most recent purchase was in late August or early September 2008 for nastyangels.com, which includes both video and pictures of what Droneburg describes as teenage girls. Droneburg knew the sites contained illegal material, which he defined as pictures of nude females under the age of eighteen. Droneburg also frequented the following free sites: duhduhteens.com, youngorchids.com, pichunter.com and teenbe.com. He found child pornography websites by using the search term "teens," "lolita," and "pedo."

During the search warrant, a binder containing printouts of child pornography was also discovered. Droneburg admitted to accessing and printing all the images from the Internet. Droneburg acknowledged the images were of underage children. Droneburg also had three CDs at his residence containing six videos of child pornography that was given to him by a friend. The six videos were:

1) "Kiddy Porn 01.mpeg", 12:10 in length, of an adult male and a young female and included rubbing of genital area, vaginal penetration and attempted anal penetration.

